**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

**RODRIGUES H.,**

       **Plaintiff,**

v.                                                 **Case No. 2:24cv117**

**CAROLYN W. COLVIN[1],
Acting Commissioner of Social Security,**

       **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Rodrigues H. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Carolyn W. Colvin, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for supplemental security income ("SSI") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 7.

Presently before the Court is Plaintiff's Motion for Summary Judgment and brief in support of reversal and remand of the Commissioner's decision denying benefits[2], ECF Nos. 9–10, and the

---

[1] On November 30, 2024, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Carolyn W. Colvin for former Commissioner of Social Security Martin O'Malley in this matter.

[2] Following the implementation of the new Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g), the parties are no longer required to file dispositive motions, and instead file a brief for the

Commissioner's brief in support of the Commissioner's decision denying benefits, ECF No. 11. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **VACATED** and **REMANDED**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for SSI on March 12, 2020[3], alleging disability due to post-traumatic stress disorder, major depression, and learning disability. R. at 137.[4] Plaintiff's application was initially denied on June 23, 2020, and again denied upon reconsideration on September 22, 2020. R. at 150, 168. On October 22, 2020, Plaintiff requested a hearing before an administrative law judge. R. at 177.

A hearing was held on November 30, 2022, at which Plaintiff appeared with counsel before Administrative Law Judge Jeffrey Jordan ("the ALJ"). R. at 31–63. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 42–63. On January 19, 2023, the ALJ issued a decision finding Plaintiff not disabled. R. at 12–24. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on March 27, 2023, making the ALJ's decision the final decision of the Commissioner. R. at 7–8.

---

requested relief. Accordingly, the Court will treat Plaintiff's "Motion for Summary Judgment" as a brief for the requested relief.

[3] Plaintiff previously filed an application for SSI on August 23, 2019, which was denied on December 5, 2019. R. at 12, 138, 153, 343. Plaintiff did not request reconsideration of the decision, and he filed a new application on March 12, 2020. R. at 137, 152. The ALJ considered the new application to be an implied request to reopen a prior claim, and the ALJ adjudicated Plaintiff's claim from the prior filing date of August 23, 2019. R. at 12.

[4] "R." refers to the certified administrative record that was filed under seal on April 17, 2024. ECF No. 6, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

Having exhausted his administrative remedies, on February 20, 2024, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On May 16, 2024, Plaintiff filed a brief in support of reversal and remand of the Commissioner's decision. ECF No. 10. On June 17, 2024, the Commissioner filed a brief in support of the Commissioner's decision denying benefits. ECF No. 11. Plaintiff filed a reply brief on July 1, 2024. ECF No. 12. Because the matter is fully briefed, it is ripe for recommended disposition.

## II. <u>RELEVANT FACTUAL BACKGROUND</u>

The Record included the following factual background for the ALJ to review:

Plaintiff was thirty-nine years old at the time of his alleged disability onset date of July 1, 2017. R. at 137. At the time of the ALJ hearing, Plaintiff lived at a long-term housing program located in Richmond, Virginia, that also assists with mental health treatment. R. at 43. In the past, Plaintiff lived with his mother and stepfather on and off for about fifteen years, and also lived with his sister for a period of time. R. at 739, 45. He has also been homeless for a number of years. R. at 1227. He has ten children, with whom he maintains a good relationship.[5] R. at 48–49. Plaintiff has a GED. R. at 46. Plaintiff has struggled with drug addiction since he was twenty-three years old. R. at 504–05.

### A. Plaintiff's Medical Records Relevant to Alleged Mental Impairments[6]

Plaintiff has a history of depression, anxiety, bipolar disorder, and posttraumatic stress disorder. *See* R. at 608. Plaintiff began treatment with methadone in 2017. Shortly before his alleged onset date, in early 2019, Plaintiff was incarcerated, and once he was released, he sought treatment with Portsmouth Department of Behavioral Healthcare Services. R. at 737. At that time

---

[5] Elsewhere in the record, it is noted Plaintiff has eleven children. *See e.g.*, R. at 1271.

[6] Because Plaintiff's physical impairments are not at issue, the Court does not address Plaintiff's medical records relating to his physical impairments.

in May 2019, Plaintiff reported daily heroin use, and cocaine use a couple times a month. R. at 737. Plaintiff stated he experienced nightmares weekly, the inability to sit still, frequent headaches, irritability with his family, paranoia, and sadness. R. at 737. Plaintiff experienced sexual abuse as a child. R. at 737. He also reported being stabbed twice in the past—once by an ex-girlfriend, and once during a fight. R. at 739. Plaintiff explained that he is triggered by the sound of silverware because his ex-girlfriend stabbed him with a kitchen knife. R. at 739. Plaintiff continued to treat with Portsmouth Department of Behavioral Healthcare Services in August 2019. R. at 744–72.

In September 2019, Plaintiff reported he started receiving methadone treatment, and was feeling better overall, but continued to feel overwhelmed with social stressors. R. at 773. His provider reported that Plaintiff's abstinence from drugs would add to his mental health improvements, and his mood continued to stabilize with assistance from medication. R. at 774. In October 2019, Plaintiff reported his medication effectiveness was good and seemed to be helping with his mood stability. R. at 781. He continued treatment with Portsmouth Behavioral Healthcare Services. R. at 784, 787.

In early 2020, Plaintiff reported an increase in his depressive symptoms after increased stress events, including his mother's declining health and the denial of his disability claim. R. at 960, 965, 967. He was admitted to the emergency department on March 18, 2020, for suicidal thoughts and plan. R. at 851, 854. Upon examination, Plaintiff's behavior was guarded and he demonstrated poor impulse control. R. at 856–57. He was oriented to time, place, person, and situation. R. at 857. Plaintiff's mood was depressed and anxious. R. at 857. Plaintiff stated he uses drugs when he is overwhelmed with depression, and he was feeling hopeless due to his mother's cancer diagnosis. R. at 858. Plaintiff also reported auditory hallucinations telling him

4

to harm himself. R. at 859. Plaintiff tested positive for cocaine, and reported a four-day binge. R. at 852, 858, 867, 1007. He was discharged after two days. R. at 867.

Plaintiff followed up with Portsmouth Behavioral Healthcare Services on March 25, 2020. His record indicates that he left the hospital prior to the completion of his treatment because he was going to go through methadone withdrawal. R. at 973. On the same day, Plaintiff began a program to build mental health skills to achieve or maintain stability and independence in the community. R. at 1079. During his assessment, Plaintiff indicated he felt like he was a good listener and a fast learner, but he lacks patience, has a difficulty time focusing, and can be anxious. R. at 1080. He explained that he feels depressive symptoms most days out of the week, and that he ends up isolating himself to cope. R. at 1080.

Plaintiff began outpatient therapy on April 25, 2020. R. at 939. There, Plaintiff reported that he was "very depressed," "has bad headaches and panic attacks from anxiety," that he does not sleep well, and he "often" has suicidal thoughts. R. at 939. Upon examination, Plaintiff had normal appearance, appropriate dress, fair insight, good judgment, normal thought content and process, intact memory, and good attention. R. at 941. However, his affect was blunted, and his mood was angry. R. at 941.

Plaintiff continued treatment with Portsmouth Department of Behavioral Healthcare Services, and continued treatment of his opioid addiction with methadone. R. at 988. On April 28, 2020, Plaintiff's provider reported that Plaintiff's perception of his problems is due to years of difficulties due to heroin and cocaine use, and other "accumulated individual problems mostly related to his drug use history." R. at 988. His provider recommended continued outpatient methadone treatment, as well as individual therapy. R. at 989.

On May 19, 2020, Plaintiff began treatment with a mental health counselor at Churchland Psychiatric Associates, Inc. R. at 1100–01. Despite several visits, in July 2020, Plaintiff reported that his depressive symptoms were not worsening, but they were also not improving either. R. at 1097–99. In July of 2020, Plaintiff's mental health skill builder, Kelly Carlton Conner, completed a disability report on behalf of Plaintiff. R. at 373. Therein, she stated that she has witnessed Plaintiff suffer from anxiety attacks and that he vomits during the attacks. R. at 374. Ms. Conner further explained that Plaintiff gets irritated easily, has mood swings, and has trouble remembering dates. R. at 374. Ms. Conner also noted that Plaintiff has trouble sleeping at night and has severe depression, and that there are dates that Plaintiff cannot get out of bed due to his depression and anxiety. R. at 374.

In the summer of 2022, Plaintiff sought treatment at Life Center of Galax, an inpatient rehab facility center. R. at 1270–73. During his intake assessment, Plaintiff reported that methadone helped with his heroin use, but he still used heroin when he had it. R. at 1271. His most recent use of heroin was about one week prior to his admission. R. at 1271. Plaintiff also reported using cocaine. R. at 1271. Plaintiff was admitted to Life Center of Galax for treatment on September 15, 2022. R. at 1213–26. Upon examination, Plaintiff was neat and clean, cooperative, and demonstrated appropriate thought process, speech, and affect. R. at 1225. The following day, Plaintiff reported he did not need any special assistance to complete his activities of daily living. R. at 1191. He also reported that he was sober in 2017 for 30 days, but relapsed due to stress. R. at 1193. On September 19, 2022, Plaintiff reported that he was not experiencing any cravings. R. at 1181.

During his time at Life Center of Galax, Plaintiff participated in group treatment. R. at 1181. He identified that his triggers for drug use included boredom, confrontation, and anger. R.

at 1184.  He also identified countermeasures to his triggers, including exercising, going to meetings, calling a friend, music, and writing.  R. at 1184.  Plaintiff continued to have anxiety, depression, and racing thoughts.  R. at 1108–09, 1241.  He also reported low motivation, poor sleep, isolating, hopelessness, and struggling to get out of bed.  R. at 1241.  He continued to treat with methadone.  R. at 1219.

Plaintiff was discharged from Life Center of Galax on November 3, 2022.  R. at 1184.  He identified that he needed a longer-term program.  R. at 1184.  Plaintiff's provider noted that Plaintiff's prognosis was "fair" so long as he followed through with a long-term program and his medical treatment.  R. at. 1184.  His treatment was considered complete at Life Center of Galax.  R. at 1189.

### B.  Mental Evaluations Completed by State Agency Examiners

At the initial level of review, state agency examiner Leslie Montgomery, Ph.D, A.B.P.O., determined that substance abuse was material to Plaintiff's case, but if he abstained from cocaine, he was capable of simple, routine tasks, and that Plaintiff had no more than moderate limitations in each area of mental functioning.  R. at 145–47.  Upon reconsideration, Richard Milan, Ph.D., similarly found that Plaintiff had no more than moderate limitations in each area of mental functioning.  R. at 160–65.

### C.  Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified that he lives at a long-term treatment facility in Richmond, Virginia, with a roommate.  R. at 43, 49.  On the average day, he wakes up on his own and attends group programming from 8:30 A.M. to 5:00 P.M.  R. at 49.  Plaintiff stated generally gets along with roommates.  R. at 50.  He testified he sometimes has anger issues, and does not often go out and socialize with others.  R. at 50.  Plaintiff testified that he does not get much sleep

7

at night, but it does not affect him the following day. R. at 51. Plaintiff stated it is difficult for him to concentrate and focus on a situation, and that he deals with memory loss. R. at 51–52.

Plaintiff also testified about the two times he was stabbed. R. at 52–53. With respect to the first stabbing by his ex-girlfriend, Plaintiff explained that silverware is a trigger for him because that was the last thing he saw and heard before she stabbed him. R. at 52. Because of this, he uses plastic silverware to eat. R. at 52. As for the second stabbing, Plaintiff testified that it occurred randomly on the street. R. at 53. Because of this, he does not deal with confrontation well, isolates himself, and feels paranoid. R. at 53. Plaintiff does not talk to people much. R. at 53.

In the past, Plaintiff performed odd jobs for financial support, such as helping people move and yardwork. R. at 46–47. Plaintiff testified he could still perform odd jobs. R. at 47. However, he has not had full-time employment within the previous fifteen years. R. at 48. Plaintiff explained that he feels like he has never been able to hold a full-time job because he cannot keep up with the task to which he is assigned. R. at 54. Plaintiff believes this is because of his comprehension level. R. at 54.

### III. <u>THE ALJ'S DECISION</u>

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 416.920; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 416.920(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 416.920(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P,

Appendix 1. § 416.920(a)(4)(iii).  If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments.  § 416.945(a).  At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity.  § 416.920(a)(4)(iv).  Finally, at step five, the ALJ considers whether the claimant can perform other work.  § 416.920(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four.  *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014).  The ALJ will determine the claimant is disabled if the claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five.  *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

In cases where drug addiction or alcoholism ("DAA") are present, a claimant cannot be found disabled if DAA are material to the determination of disability.  42 U.S.C. § 423(d)(2)(C).  If there is evidence of DAA, the ALJ must determine if DAA is a "contributing factor material to the determination of disability."  § 416.935(a).  To determine whether the DAA is "material" the ALJ must "evaluate which of [the claimant's] current physical and mental limitations, upon which [the ALJ] based [their] current disability determination would remain if [the claimant] stopped using drugs or alcohol."  § 416.935(b)(2).  The ALJ does so by "apply[ing] the steps of the sequential evaluation [process] a second time."  Social Security Ruling 13-2p, 2013 WL 621536, at *4 (Feb. 20, 2013).  If during the second sequential evaluation process the ALJ determines that

the claimant's remaining limitations would not be disabling, then the ALJ must find that DAA is a contributing factor material to the determination of disability and that the claimant is not disabled. § 416.935(b)(2)(i). However, if the ALJ determines the claimant's remaining limitations would still be disabling, then the ALJ must find that DAA is not a contributing factor material to the determination of disability, and that the claimant is disabled. § 416.935(b)(2)(ii).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the filing date of the previous claim, August 23, 2019. R. at 14. At step two, the ALJ found that Plaintiff had the following severe impairments: anxiety disorder, post-traumatic stress disorder, major depressive disorder, bipolar disorder, and substance use disorder. R. at 14. At step three, the ALJ considered Plaintiff's severe impairments and found that including Plaintiff's substance use, his impairments met the severity of Listing 12.04 (depressive, bipolar, and related disorders) of 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 15–18. In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 416.929 and SSR 16-3p." R. at 15.

In evaluating Listing 12.04, the ALJ found that the paragraph A criteria were satisfied because Plaintiff "had a depressed mood, diminished interest in almost all activities, psychomotor agitation, decreased energy, and feelings of worthlessness." R. at 16. As for the paragraph B criteria, the ALJ found that it was satisfied because Plaintiff's impairments caused moderate limitations in understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace, and an extreme limitation in adapting and managing

10

oneself. R. at 16. The ALJ detailed Plaintiff's history with substance abuse, and found that when Plaintiff is abusing substances, the combination of his substance abuse and his comorbid mental impairments result in the extreme limitation in adapting and managing oneself. R. at 17.

Thus, at step two of the second sequential evaluation process, the ALJ found that if Plaintiff stopped substance abuse, he would still have a severe impairment or combination of impairments. R. at 18. At step three, the ALJ found that if Plaintiff stopped substance abuse, he would not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 18–19. In making his determination, the ALJ considered Listings 12.04 and 12.06, and found that if Plaintiff stopped substance abuse, he would have only moderate limitations in understanding, remembering, or applying information; interacting with others; concentrating, persisting, and maintaining pace, and adapting or managing oneself, and accordingly, Plaintiff did not satisfy the paragraph B criteria. R. at 18–19. The ALJ also considered whether Plaintiff satisfied paragraph C criteria, and found that there was no evidence in the record of marginal adjustment to everyday changes. R. at 19.

After step three of the second sequential evaluation process, the ALJ determined that Plaintiff if Plaintiff stopped substance abuse, he would have the residual functional capacity ("RFC") to perform less than a full range of medium level work, with the following limitations:

> [Plaintiff] cannot climb ladders, ropes, and scaffolds, but he can perform other postural movements on a frequent basis. [He] is limited to simple, routine, repetitive and low stress tasks with low stress defined as requiring work with no more than occasional changes in the routine and changes has to be made gradually and work that allows him to avoid fast-paced tasks such as assembly line jobs involving production quotas. Also, [Plaintiff] is limited to no direct contact with the public and occasional interaction with co-workers and supervisors. [Plaintiff] is limited to frequent fingering, grasping, handling, and reaching. [He] cannot work around hazards such as moving dangerous machinery and unprotected heights. [Plaintiff] cannot work in environments that would subject him to concentrated exposure to respiratory irritants and extreme temperatures and humidity.

R. at 19. The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to produce his alleged symptoms, however, Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. at 20.

At step four, the ALJ determined that Plaintiff does not have past relevant work. R. at 22. At step five, the ALJ found that if Plaintiff stopped substance abuse, Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 23. The ALJ determined that Plaintiff's DAA is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped substance abuse. Accordingly, Plaintiff was not disabled from the alleged onset date through the date of the decision. R. at 23.

## IV. **STANDARD OF REVIEW**

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of 'more than a mere scintilla of evidence but may be somewhat less than a preponderance.'" *Britt v. Saul*, 860 F. App'x 256, 260 (4th Cir. 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises several challenges to the ALJ's decision. Plaintiff alleges that the ALJ erred by: (1) mischaracterizing the evidence during periods where Plaintiff was not using substances; and (2) improperly evaluating the listings at step three of the sequential evaluation process.

### A. The ALJ Assessment of the Materiality of Plaintiff's Substance Use is Not Supported by Substantial Evidence.

Plaintiff argues that the ALJ's characterization of periods when Plaintiff was not using substances does not adequately reflect the record, and that Plaintiff's DAA is not material. ECF No. 10 at 8. Plaintiff contends that the ALJ mischaracterized evidence relating to Plaintiff's time during his treatment at Life Center of Galax, and his time at Portsmouth County Jail. *Id.* at 8. In response, the Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff's functional abilities improved in the absence of substance use. ECF No. 11 at 17–20.

Social Security Ruling 13-2p[7] ("SSR 13-2p") states that "a claimant shall not be considered

---

[7] "Social Security Rulings, or 'SSRs,' are 'interpretations by the Social Security Administration of the Social Security Act.'" *Dowling v. Comm'r of SSA*, 986 F.3d 377, 387 n.9 (4th Cir. 2021) (citation omitted). SSRs "do not carry the force of law but are 'binding on all components of the Social Security

to be disabled . . . if alcoholism or drug addiction would . . . be a contributing factor material to

the Commissioner's determination that the individual is disabled." SSR 13-2p, 2013 WL 621536,

at *2 (Feb 20, 2013) (citing 42 U.S.C. § 223(d)(2)(C) and 42 U.S.C. § 1614(a)(3)(J)).  To find

DAA material to a determination of disability, SSR 13-2p provides that there must be evidence in

the record demonstrating that the remaining limitations were not disabling during the relevant

period. *Id.* at *12.

SSR 13-2p further adds guidance on how to evaluate periods of abstinence from substance

use. *Id.*  It instructs that

> [i]n all cases in which we must consider periods of abstinence, the claimant should
> be abstinent long enough to allow the acute effects of drug or alcohol use to abate.
> Especially in cases involving co-occurring mental disorders, the documentation of
> a period of abstinence should provide information about what, if any, medical
> findings and impairment-related limitations remained after the acute effects of drug
> and alcohol use abated. [The ALJ] may draw inferences from such information
> based on the length of the period(s), how recently the period(s) occurred, and
> whether the severity of the co-occurring impairment(s) increased after the period(s)
> of abstinence ended. To find that DAA is material, we must have evidence in the
> case record demonstrating that any remaining limitations were not disabling during
> the period.

*Id.*  The ALJ must consider "when the period of abstinence occurred," and "the circumstances

under which a period[] of abstinence takes place, especially in the case of a claimant with a co-

occurring mental disorder[]." *Id.*

Most relevant here, SSR 13-2p explains how to evaluate a claimant who has demonstrated

improvement in a highly structured treatment setting.  It recognizes, "[i]mprovements in a co-

occurring mental disorder in a highly structured treatment setting, such as a hospital or substance

abuse rehabilitation center, may be due at least in part to treatment for the co-occurring mental

disorder, not (or not entirely) the cessation of substance use." *Id.*  Under these circumstances, "[i]f

---

Administration,' 20 C.F.R. § 402.35(b)(1), as well as on ALJs when they are adjudicating Social Security
cases." *Id.*

the evidence in the case record does not demonstrate the separate effects of the treatment for DAA and for the co-occurring mental disorder(s), [the ALJ] will find that DAA is not material." *Id.* The ruling further guides that "a single hospitalization or other inpatient intervention is not sufficient to establish that DAA is material when there is evidence that a claimant has a disabling co-occurring mental disorder(s)." *Id.* at *13. Rather, there must be "evidence from outside of such highly structured treatment settings demonstrating that the claimant's co-occurring mental disorder(s) has improved, or would improve, with abstinence." *Id.*

In the ALJ's analysis, the ALJ refers to two periods of abstinence—Plaintiff's incarceration, as well as his time at Life Center of Galax. R. at 21. The ALJ stated that at Life Center of Galax, Plaintiff "was noted to have met his discharge objective but did require ongoing substance abuse counseling, and to attend narcotics anonymous (Exhibit 16F, page 84) [R. at 1189]" and "during those times [of abstinence] . . . [his] mental functioning results in at most moderate limitations." R. at 21.

The Court finds that the ALJ's analysis of whether substance use is a contributing factor material to the determination of disability lacks substantial evidence. Life Center of Galax is a "highly structured treatment environment," and according to SSR 13-2p, "a single . . . inpatient intervention is not sufficient to establish that DAA is material when there is evidence that [a Plaintiff] has a disabling mental disorder," and the ALJ "need[s] evidence from outside such highly structured treatment settings demonstrating that the [Plaintiff's] co-occurring mental disorder[] has improved, or would improve, with abstinence." *See* SSR 13-2p, 2013 WL 621536, at *13. Thus, pursuant to SSR 13-2p[8], Plaintiff's treatment at Life Center of Galax, standing on its own, is insufficient to establish that DAA is material in this case.

---

[8] Neither the Plaintiff's brief nor the Commissioner's brief provided a particularly helpful analysis regarding Social Security Ruling 13-2p, especially as it relates to periods of abstinence.

The only other period of abstinence the ALJ cites to support the notion that Plaintiff's periods of abstinence demonstrate that DAA is material is Plaintiff's time while incarcerated. R. at 21. The ALJ's simple statement that Plaintiff abstained from drug use while he was incarcerated does little to demonstrate "information about what, if any, medical findings and impairment-related limitations remained after the acute effects of drug [] use abated." *See id.* at *12. Nor does the ALJ cite any records involving Plaintiff's abstinence during his incarceration to support the conclusion that Plaintiff would only have moderate limitations if he stopped substance use. Looking elsewhere in the ALJ's decision, the ALJ simply states that Plaintiff was incarcerated, with his probation ending June 11, 2019. R. at 16. The simple fact that Plaintiff was abstinent from drug use while he was incarcerated does not support the ALJ's materiality analysis.

The Commissioner argues that other evidence in the record supports the ALJ's rationale that Plaintiff's DAA is material in this case. ECF No. 11 at 19. Aside from the records from the highly structured environment at Life Center of Galax and Plaintiff's incarceration, the Commissioner points to several records to support the notion that DAA is material. *Id.* However, only two of the records were actually cited and relied upon by the ALJ. The first, simply states that Plaintiff was sober while he was incarcerated. *Id.* (citing R. at 21, 740). As explained above, simply stating that Plaintiff was sober while he was incarcerated does not provide any analysis or insight as to Plaintiff's co-occurring mental disorders or his functioning during that period. The second record, according to the Commissioner, states that "in August 2022, Plaintiff had been sober for two weeks, denied suicidal ideation or aggression, and lived with friends in a supportive environment with minimal support." *Id.* (citing R. at 20, 1271). The ALJ's single citation is to a somewhat ambiguous entry from Plaintiff's inquiry form at Life Center of Galax.[9] The inquiry

---

[9] For example, the inquiry form notes that Plaintiff lives in a supportive environment. R. at 1271. It then comments that Plaintiff lives with "minimal support." R. at 1271. It is not clear whether this means

form was created on August 16, 2022, and modified on September 14, 2022. R. at 1270. While it appears the record supports that at some point Plaintiff had been sober for two weeks, he also was checking himself into Life Center of Galax for inpatient treatment, and had last used cocaine and heroin on September 5, 2022—one week before his admission. R. at 1271. Additionally, while the ALJ correctly stated Plaintiff was living with friends, in context, the record as a whole shows that Plaintiff was only living with friends because he was kicked out of the family home. R. at 1273. Again, the cited evidence does not provide insight as to Plaintiff's symptoms related to anxiety and depression during that period of abstinence.

In reviewing the other records cited by the Commissioner (but not the ALJ), the Court finds that they similarly offer little insight as to Plaintiff's functioning if he were to abstain from using drugs and the materiality of his substance use. For example, that Plaintiff "admitted" he wished to stop using drugs to improve his current status, return to normal living, and rejoin the workforce. *Id.* (citing R. at 988). Plaintiff's desire to abstain from substance use—but not actual evidence relating to his abstention—does not provide insight as to his functioning from co-occurring mental disorders if he were to stop substance use. Most importantly, although the Commissioner attempts to provide evidentiary support in the record for the ALJ's conclusion, it is the ALJ's responsibility in the first instance to point to evidence in the record to support his conclusions. It is not up to the Court, or the Commissioner, "to fill in the gaps" of the ALJ's reasoning. *Boyd v. Kijakazi*, No. 2:21cv29, 2022 WL 949904, at *3 (E.D. Va. Mar. 29, 2022) (noting the Court will not "bolster an inadequate opinion"); *see also Patterson v. Comm'r of SSA*, 846 F.3d 656, 662 (4th Cir. 2017) (stating the court "cannot fill in the blanks for the ALJ in the first instance"); *Torres v. Colvin*, No.

---

Plaintiff's environment is only minimally supportive, or whether Plaintiff only needs minimal support. Additionally, the inquiry form notes that Plaintiff "has gone 2 weeks sober." R. at 1271. It is not clear whether this means that when the inquiry was filled out Plaintiff had been two weeks sober, or whether in general, Plaintiff has gone two weeks sober in the past.

1:14cv7, 2016 WL 54933, at *7–8 (W.D.N.C. Jan. 5, 2016) (rejecting the Commissioner's "invitation" to "scour the administrative record in search of facts which could provide substantial support for the ALJ's conclusions, and thus cure the ALJ's deficient decision on review.").

In sum, the ALJ's assessment of the materiality of Plaintiff's substance use is not supported by substantial evidence. The evidence that the ALJ relied upon—mostly, Plaintiff's abstinence while participating in a highly structured treatment setting—is not the type of evidence SSR 13-2p instructs is sufficient to demonstrate materiality. The other evidence cited by the ALJ related to Plaintiff's abstinence does little to demonstrate what "impairment-related limitations remain[]" after the acute effects of drug . . . use abate[]." SSR 13-2p, 2013 WL 621536, at *12. The ALJ failed to "identify evidence that supports his conclusion" and failed to "build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018). Accordingly, the ALJ's materiality analysis lacks substantial evidence, and requires remand.

### B. On Remand, the ALJ Should Consider Plaintiff's Remaining Arguments.

The remainder of Plaintiff's remaining arguments involve whether the ALJ erred in evaluating the listings. ECF No. 10 at 6–7. First, Plaintiff argues that by not evaluating each of Plaintiff's severe impairments to determine whether they meet a listing, the ALJ was "unable to determine if DAA was material to the [l]isting" and that the ALJ "should have conducted a diagnosis-by-diagnosis explanation why all the severe impairments either failed to meet or met the listed impairments." *Id.* at 7. Specifically, Plaintiff contends that the ALJ erred by only evaluating Listing 12.04 (depression) if substance abuse were stopped, and failing to evaluate Listing 12.06 (anxiety), and 12.15 (trauma and stressor related disorders). *Id.* at 7. Although Plaintiff concedes that the paragraph B criteria is the same for the mental disorders listings, Plaintiff contends the

ALJ should have evaluated the paragraph A criteria for bipolar disease, PTSD, and anxiety because "the different paragraph A medical criteria would cause different impact on the functioning ability of the B criteria." *Id.* Second, Plaintiff argues that the ALJ did not properly analyze the paragraph C criteria to determine whether Plaintiff meets a listing. *Id.* at 11–13. In response, the Commissioner argues that the ALJ did not err by only analyzing one listing, especially considering the ALJ found in favor of Plaintiff before doing the materiality analysis. ECF No. 11 at 22. Further, the Commissioner argues the ALJ did not err in analyzing only one listing because once the ALJ found Plaintiff did not meet the paragraph B criteria, the paragraph A criteria are irrelevant. *Id.* at 23. Finally, the Commissioner argues that the ALJ properly analyzed the paragraph C criteria. *Id.* at 25–26.

With respect to Plaintiff's first argument, there is no specific requirement that the ALJ conduct a "diagnosis-by-diagnosis" evaluation at for each of Plaintiff's severe impairments at step three of the sequential evaluation process. "An ALJ is not required to explicitly identify and discuss every possible listing; rather, he is compelled to provide a coherent basis for his Step Three determination, particularly where the 'medical record includes a fair amount of evidence' that a claimant's impairment meets a disability listing." *Ezzell v. Berryhill*, 688 F. App'x 199, 200 (4th Cir. 2017) (quoting *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013)); *Ketcher v. Apfel*, 68 F. Supp. 2d 629, 645 (D. Md. 1999) (explaining that the duty to discuss a listing is triggered only if there is ample evidence in the record to support a finding that the listing is satisfied). On remand, the ALJ's materiality analysis may affect his current analysis of the listings, and the ALJ should consider whether a "fair amount of evidence" warrants the analysis of additional listings.

As for Plaintiff's second argument, the Court agrees that the ALJ's analysis of the paragraph C criteria was somewhat cursory. *See* R. at 18. In evaluating the paragraph C criteria,

the ALJ stated that he "considered whether the 'paragraph C' criteria are satisfied" and concluded that "the evidence fails to establish the presence of the 'paragraph C' criteria if the [Plaintiff] stopped substance use" because "[t]here is no evidence of marginal adjustment to everyday changes." R. at 18. Some courts have found such a cursory explanation warrants remand. *See Canady v. Colvin*, No. 5:12-2507, 2014 WL 878880, at \*10 (D.S.C. Mar. 5, 2014) (finding ALJ's failure to offer any discussion of the medical evidence to explain why paragraph C criteria was not met made it impossible for the court to determine whether the ALJ's listing analysis was supported by substantial evidence); *Lester v. Berryhill*, No. 2:17-cv-04376, 2018 WL 4956532, at \*21-23 (S.D.W. Va. Sept. 21, 2018), *report and recommendation adopted*, No. 2:17-4376, 2018 WL 4956122 (S.D.W. Va. Oct. 12, 2018) (finding ALJ's analysis of paragraph C criteria was conclusory and did not provide an adequate basis for the court to review the ALJ's decision). However, other courts have held that a cursory paragraph C explanation does not necessarily warrant remand so long as "the totality of the ALJ's opinion shows sufficient consideration of the paragraph C criteria and related evidence such that the [Court] can discern the ALJ's rationale." *Barefoot v. Kijakazi*, No. 5:21cv529, 2023 WL 2769502, at \*4 (E.D.N.C. Jan. 4, 2023). While at this point the Court will not find error in the ALJ's simple statement that Plaintiff does not meet the paragraph C criteria because there is "no evidence of marginal adjustment," on remand, the ALJ should ensure his decision as a whole, and more specifically his paragraph C analysis, supports any such determination.

## VI. **RECOMMENDATION**

For the reasons explained above, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **VACATED** and **REMANDED**.[10]

---

[10] *See* n. 2.

## VII. **REVIEW PROCEDURE**

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
January 8, 2025